STATE of Indiana on the Relation of Norman Anthony WOODFORD, Relator,

v.

The MARION SUPERIOR COURT and the Honorable Patricia J. Gifford, Judge Thereof, Respondents.

No. 49S00–9503–OR–316.

Supreme Court of Indiana.

Sept. 7, 1995.

J. Richard Kiefer, Indianapolis, for relator.

Scott C. Newman, Marion County Prosecutor, Mark S. Massa, Chief Counsel, Indianapolis, for respondents.

SHEPARD, Chief Justice.

Relator Norman Woodford requested that we issue a writ of mandate directing the Marion Superior Court to take jurisdiction over his second petition for post-conviction relief. We conclude that the trial court correctly declined to entertain the petition because Woodford did not comply with Post–Conviction Rule 1(12).

In December 1974, Woodford and Robbie Allen Woods held up a Hook's Drug Store at gun point. In the shoot-out that ensued, both Woods and Officer Ronald Manly died. The State filed multiple charges against Woodford. Woodford and his lawyers bargained with the prosecutor, finally agreeing that Woodford would plead guilty to murdering a police officer during a robbery. The State agreed to forego the death penalty and recommended a life sentence. It also agreed to dismiss the remaining charges arising out of the Hook's robbery and dismiss another armed robbery charge stemming from a hold-up at a White Castle restaurant.

In 1982 Woodford petitioned for post-conviction relief, challenging the voluntariness of his guilty plea and the adequacy of the factual basis supporting the plea. The trial court denied the petition based on laches. We reversed that finding, *Woodford v. State* (1985), Ind., 484 N.E.2d 563, and also noted for the purposes of remand that "the transcript of the guilty plea hearing includes substantial evidence from which the guilty plea court could have concluded that Petitioner and the accomplice acted together throughout the robbery, although the record does contain conclusive evidence that it was the accomplice who killed the police officer." *Id.* at 565. That transcript contained Woodford's description of his participation in the crime, including his taking aim at Officer Manly. It also demonstrated that Manly was killed with a gun owned by Woodford, probably actually fired by the accomplice.

While Woodford's first post-conviction relief petition was pending in the trial court on remand, we issued our decision in *White v. State* (1986), Ind., 497 N.E.2d 893. It affected Woodford's claim by redefining the facts to be pleaded and proved in a post-conviction challenge to a guilty plea. The trial court applied the *White* standard to the evidence submitted at the earlier hearing on Woodford's petition and denied relief. In affirming that judgment, we noted *White's* impact on Woodford, remarking "that a petitioner so situated should be entitled to file a new petition if he 'has any other basis upon which to establish that his plea was not voluntary and intelligent.'" *Woodford v. State* (1989), Ind., 544 N.E.2d 1355, 1358 (quoting *White*, 497 N.E.2d at 906). This observation is the heart of Woodford's request for a writ of mandamus.

The current sequence of events began at the end of 1994, and the legal issues are complicated by a change in prosecutors. On November 18, 1994, Woodford filed a new post-conviction relief petition challenging his guilty plea. On December 28th, outgoing

prosecutor Jeffrey Modisett and Woodford's lawyer submitted a plea agreement and proposed findings of fact and conclusions of law asking the court to set aside the life sentence and impose a sentence of fifty years with ten years suspended to probation. (R. 25–34.) On December 30, the Prosecutor answered Woodford's petition by admitting nearly all the allegations. If approved by the court, the net result of the transaction would have been immediate release from prison.

On January 9, 1995, the trial court struck Woodford's petition *sua sponte* for failure to obtain leave to file a successive petition under Post–Conviction Rule 1(12). Amendments to this rule effective January 1, 1994, require prisoners desiring to pursue successive post-conviction relief petitions to obtain leave of either the Supreme Court or the Court of Appeals before filing in a trial court. The following day, new prosecutor Scott C. Newman moved to amend the State's answer by denying most of the allegations and raising various affirmative defenses. He also appeared to resist this petition.

Woodford bases his petition for the writ of mandamus on two contentions:

1. That the Supreme Court expressly authorized his successive post-conviction relief petition challenging the voluntariness of his guilty plea in our denial of relief on his first petition, and

2. That the trial court's jurisdiction to hear Woodford's second petition is mandatory as the law of the case.

Petitioner's second argument is built on the first. Our resolution of the first issue renders the second issue moot.

■ The writ of mandamus is an extraordinary remedy, equitable in nature and viewed with disfavor. *State ex rel. Cross v. Lake Superior Court* (1979) 272 Ind. 141, 142, 396 N.E.2d 125, 126. Mandamus does not lie unless the relator has a "clear and unquestioned right to relief," *State ex rel. Gibson General Hospital v. Warrick Circuit Court* (1966) 247 Ind. 240, 243, 214 N.E.2d 655, 657, and the respondent court failed to

"perform a clear, absolute, and imperative duty imposed by law." *State ex rel. City of South Bend v. Court of Appeals* (1980) 273 Ind. 551, 553, 406 N.E.2d 244, 246. The principal issue before us, therefore, is the determination of what, if any, legal duty was imposed on the Superior Court by our resolution of the appeal in Woodford's first post-conviction proceeding.

■ When we decided Woodford's appeal in 1989, we held that "[Woodford] did not plead or prove specific facts from which a finder of fact could conclude by a preponderance of the evidence that the sentencing judge's failure to make a full inquiry in accordance with the statute rendered his decision involuntary or unintelligent." 544 N.E.2d at 1358. We went on to add that Woodford "should be entitled" to file a new petition if he "has any other basis upon which to establish that his plea was not voluntary and intelligent." *Id.* at 1358, quoting *White*, 497 N.E.2d at 906.[1]

That statement was written at a time when our rules permitted prisoners to file successive post-conviction relief petitions virtually without limitation. Woodford's "entitlement" was nothing more than an invitation to file another petition—one that complied with the law, not a special exemption from it. In sum, our holding in that appeal did not impose a special duty on the Superior Court with respect to Woodford's eventual petition for post-conviction relief.

Although Woodford was clearly burdened with having to plead specific facts before he was entitled to a full hearing on the merits, nothing prevented him from filing his second petition the very next day. Instead, Woodford waited more than five years before filing his next petition, and the rules of post-conviction procedure changed in the interim.

When we amended Post–Conviction Rule 12 to require leave of the appellate courts before filing a successive petition in the trial court, the amendment applied without exception to all petitions. Woodford's petition

---

1. Woodford has done little by way of pleading "any other basis upon which to establish that his plea was not voluntary and intelligent." *Woodford,* 544 N.E.2d at 1358. The claims in his November 1994 petition, Record at 8–11, are virtually identical to the claims presented in his 1982 petition. *Woodford,* 544 N.E.2d at 1358 and n. 1.

clearly comes within the scope of this rule. Nothing we held in affirming the denial of Woodford's first post-conviction relief petition "froze" the 1989 procedural rules for him or exempted Woodford from compliance with any procedural rules in effect at the time he would file. The Superior Court dismissed Woodford's second post-conviction petition because he had not first obtained leave to file. The dismissal fully accorded with the law, and thus no breach occurred.

■ As we have observed before, "[i]t is well settled that writs of mandate and prohibition will be issued only where the trial court has an *absolute duty* to act or refrain from acting." *State ex rel. Harris v. Scott Circuit Court* (1982), Ind., 437 N.E.2d 952, 954 (emphasis added). This extraordinary remedy is not available where the matter is within the discretion of the trial court. *Id.* Because the trial court had no absolute duty to consider Woodford's petition, the petition for a writ of mandate should be denied.

For these reasons, we denied Woodford's petition for a writ of mandamus.

DICKSON and SELBY, JJ., concur.

DeBRULER, J., dissents with separate opinion.

SULLIVAN, J., dissents with separate opinion in which DeBRULER, J., joins.

DeBRULER, Justice, dissenting.

Woodford is a member of a unique class of post-conviction petitioners. By reason of a shift in the law, this class on appeal was subjected to a legal standard which had not existed on trial. This deprivation was consistent with the promise of remedy by due course of law, art. 1, § 12, Indiana Constitution, and the promise of equal privileges and immunities to all citizens, art. 1, § 23, because this Court granted the members of this class the right to return to the trial court and to file a new post-conviction petition to which the new legal standard would be applied. *White v. State* (1986), Ind., 497 N.E.2d 893. In my opinion, the right of the members of this unique class to now file under the new legal standard has been declared by this Court, is manifest; and post-conviction peti-

tions filed in exercise of the right by the members of this class are not second or successive petitions subject to regulation by this Court or the Court of Appeals under PCR 1(12). I would therefore grant this writ.

SULLIVAN, Justice, dissenting.

What is really going on in this case is that, after years of negotiating with the Marion County Prosecutor's office, Woodford and the Prosecutor agreed to a reduction in Woodford's sentence from life in prison to forty years. A plea agreement to that effect (structured for procedural reasons as a petition for post-conviction relief) was filed with the trial court. There is no question that the trial court would have had discretion to accept or reject the agreement. *Petty v. State* (1989), Ind., 532 N.E.2d 610, 612. But, citing our new rule requiring appellate pre-approval for filing successive petitions for post-conviction relief, we deny Woodford the opportunity to have the trial court rule on the agreement.

I believe that the language in our earlier opinion in Woodford's case was sufficient to give him an exemption from application of the new rule. Furthermore, the whole point of the new rule in non-capital cases is to weed out frivolous petitions for post-conviction relief, thereby conserving prosecutorial, trial court, and, ultimately, appellate court resources. That policy is in no way furthered when, as here, the petitioner for post-conviction relief acts with the full cooperation of the prosecutor.

I would grant the writ.

DeBRULER, J., joins.